

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: TASIGNA (NILOTINIB) PRODUCTS
LIABILITY LITIGATION                                                        MDL No. 3006

## TRANSFER ORDER

**Before the Panel:** Plaintiff in the Southern District of Illinois *Garland* action moves under 28 U.S.C. § 1407 to centralize this litigation involving atherosclerotic injuries associated with use of the chronic myeloid leukemia drug Tasigna (nilotinib) in the Southern District of Illinois or, alternatively, the District of New Jersey. Plaintiff's motion included eighteen actions pending in twelve districts, as listed on Schedule A, as well as two potentially-related actions.[1] Plaintiffs in all actions support the motion. Defendant Novartis Pharmaceuticals Corp. opposes centralization in favor of informal cooperation among the parties; alternatively, Novartis suggests centralization in the Middle District of Florida.

After considering the argument of counsel,[2] we find that centralization of these actions in the Middle District of Florida will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions can be expected to share factual questions arising from allegations that Novartis failed to appropriately warn of the risks that use of Tasigna may cause severe atherosclerotic injuries. Despite warning doctors and patients in Canada of the heightened risks of atherosclerotic-related conditions,[3] plaintiffs contend that Novartis concealed its knowledge of Tasigna's unreasonably dangerous risks from plaintiffs, other consumers, and the medical community in the U.S. All plaintiffs bring claims for strict products liability – failure to warn and negligence. Issues of general causation and Tasigna's labeling and

---

[1] These actions, and any other related actions, are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1 and 7.2.

[2] In light of the concerns about the spread of COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of July 29, 2021. *See* Suppl. Notice of Hearing Session, MDL No. 3006 (J.P.M.L. July 12, 2021), ECF No. 27.

[3] The Canadian warnings reportedly were prominently displayed in a box entitled "Serious Warnings and Risks," which directed health professionals to the Warnings and Precautions section. It warned that atherosclerotic-related conditions could result in death and that Tasigna-related peripheral arterial occlusive disease, "can be severe, rapidly evolving, and may involve more than one site. Peripheral arterial occlusive disease might require repeated revascularization procedures and can result in complications that may be serious such as limb necrosis and amputations."

regulatory history appear common to all actions. Centralization offers substantial opportunity to streamline pretrial proceedings; reduce duplicative discovery and conflicting pretrial obligations; prevent inconsistent rulings on common *Daubert* challenges and summary judgment motions; and conserve the resources of the parties, their counsel and the judiciary.

Novartis opposes centralization, arguing that there are too few actions to justify centralization and that informal cooperation is feasible. We are not persuaded by these arguments. The prospect for informally coordinating so many actions with differing schedules before so many different judges seems labor-intensive and inefficient. To date, eighteen actions and two potential tag-along actions are pending in thirteen different districts before nineteen judges. The number of actions appears likely to grow. The parties estimated at oral argument that there are approximately 186 state court cases in New Jersey, which recently established a multi-county litigation docket for Tasigna litigation.[4] Additionally, counsel for plaintiffs state that they are reviewing over two hundred potential new cases. While defendants are correct that we are "disinclined to take into account the mere possibility of future fillings in [its] centralization calculus," *In re Lipitor*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013), the fact that so many Tasigna cases have been filed recently in Novartis's home state adds some credence to the prediction that more cases likely will be forthcoming.

Novartis cites our past decisions denying centralization in favor of informal cooperation, but those decisions present distinguishable circumstances. In *In re: Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d 1393, 1394 (J.P.M.L. 2014), we denied centralization of allegations that defendant failed to warn users that discontinuing use of antidepressant Cymbalta allegedly causes various withdrawal symptoms. But that litigation involved actions with significantly different procedural postures – the three longest-pending actions were filed over a year before the remaining 22 actions and were nearing the conclusion of discovery. *Id.* Here, though most actions have been pending for over a year, no party asserts that discovery has concluded. Novartis also points to *In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017), but that litigation involved only sixteen cases pending in six districts, and ten of the actions were pending before a single judge in the District of South Carolina and were "proceeding in a coordinated fashion. Moreover, those ten actions were brought by just two groups of plaintiffs' counsel. Of the remaining six actions, four were brought by the same plaintiffs' counsel, and the parties to those actions already are working successfully to minimize overlapping pretrial proceedings by, for example, sharing discovery produced in multiple actions." *Id.* We also noted that "not a single party to any of the six actions pending outside the District of South Carolina supports centralization." *Id.* Here, all plaintiffs, who are represented by two groups of counsel from three law firms, support centralization. Unlike in *In re: Sorin*, no cases – much less a majority of the pending cases – are proceeding in a coordinated fashion in a single district.

Finally, Novartis argues that plaintiff-specific causation issues arising from diagnoses of atherosclerotic conditions in the Tasigna patient population are central to each action and best managed outside of an MDL. But "[a]lmost all personal injury litigation involves questions of causation that are plaintiff-specific. Those differences are not an impediment to centralization

---

[4] Centralization also facilitates coordination of the federal and state court actions.

when common questions of fact are multiple and complex." *See, e.g., In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015). Here, issues of general causation and discovery into Tasigna's labeling and regulatory history, which may be international in scope, appear to be sufficiently complex to justify centralization.

We are persuaded that the Middle District of Florida is the appropriate transferee district for these cases. More cases are pending in this district than any other district. The Middle District of Florida offers a convenient and readily accessible district that is underutilized as a transferee forum. By selecting Judge Roy Bale Dalton, we are selecting a jurist who is familiar with the contours of multidistrict litigation. We are confident that Judge Dalton will steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Middle District of Florida are transferred to the Middle District of Florida and, with the consent of that court, assigned to the Honorable Roy Bale Dalton for coordinated or consolidated proceedings with the actions pending there and listed on Schedule A.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Catherine D. Perry          Nathaniel M. Gorton
Matthew F. Kennelly         David C. Norton
Roger T. Benitez            Dale A. Kimball

IN RE: TASIGNA (NILOTINIB) PRODUCTS  
LIABILITY LITIGATION                                                          MDL No. 3006

## SCHEDULE A

<u>Western District of Arkansas</u>

BURKE v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 2:20−02032

<u>District of Connecticut</u>

COLELLA v. NOVARTIS PHARMACEUTICALS CORP, C.A. No. 3:20−00367

<u>Middle District of Florida</u>

TONGE v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 2:20−00168  
GIANCASPRO v. NOVARTIS PHARMACEUTICALS CORPORATION,  
    C.A. No. 3:20−00346  
MERCED, ET AL. v. NOVARTIS PHARMACEUTICALS CORPORATION,  
    C.A. No. 8:20−00587

<u>Southern District of Illinois</u>

GARLAND v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 3:20−00269

<u>District of Maryland</u>

WITT v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 1:20−01249

<u>District of New Jersey</u>

GUSTIN, ET AL. v. NOVARTIS PHARMACEUTICALS CORPORATION,  
    C.A. No. 2:20−02753  
DEAN v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 2:20−02755

<u>District of New Mexico</u>

HURD v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 2:20−00262

<u>Southern District of New York</u>

LALLY v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 1:20−02359

-A2-

Middle District of North Carolina

DAVIS v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 1:20-01127

District of North Dakota

POITRA v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 3:20-00123
ISAACSON v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 3:21-00057

Western District of Washington

CRAIG v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 2:20-01641
PEDERSON v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 3:20-05216
BECKER v. NOVARTIS PHARMACEUTICALS CORPORATION, C.A. No. 3:20-05221

Eastern District of Wisconsin

SCHIMMING, ET AL. v. NOVARTIS PHARMACEUTICALS CORPORATION,
    C.A. No. 2:21-00135