**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: TASIGNA (NILOTINIB)
PRODUCTS LIABILITY LITIGATION

Case No. 6:21-md-03006-RBD-DAB
(MDL No. 3006)

---

**NOVARTIS PHARMACEUTICALS CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND CASE MANAGEMENT DEADLINES**

Defendant Novartis Pharmaceuticals Corporation ("NPC") submits this opposition to plaintiffs' Motion to Extend Case Management Deadlines (ECF No. 117).

Plaintiffs' request – *two months before the close of fact discovery* – is premature and should be revisited after further developments occur with the discovery at issue. NPC acknowledges, as it informed the Court in the 10-day status report submitted on May 5, that complete production of the anonymized raw datasets from clinical studies may not be completed until after the close of fact discovery on July 15, 2015. This is the only aspect of discovery that NPC has represented to plaintiffs that may not be completed before the close of fact discovery. This single discovery issue – involving raw data that plaintiffs originally sought for their expert's use, not fact depositions – does not justify extending all the discovery deadlines for information that only one of plaintiffs' experts may need.

The other issues raised in plaintiffs' motion as a purported basis to extend the discovery deadlines do not warrant such relief. Plaintiffs' request for additional discovery regarding the Argus safety database has been a constantly moving target. Plaintiffs already have 21,095 adverse events from Argus that were produced on February 6, 2022, that they can review and utilize as appropriate to support their theory of the case. Plaintiffs' additional requests for production from Argus – which were not made until March 25, 2022, and have continued to vary over time – present technological challenges that NPC has informed plaintiffs and the Court about, but NPC is working to complete this production as soon as possible. NPC anticipates that the additional Argus report will be provided by the end of May (if it is technologically feasible).

Plaintiffs have failed to demonstrate good cause to extend the discovery deadlines as plaintiffs have not been diligent in pursuing discovery in this litigation, despite both NPC's and the Court's insistence that plaintiffs do so. Plaintiffs waited seven months after this MDL commenced before they began issuing fact deposition notices, even though the Court implored plaintiffs to begin doing so as early as February this year. Plaintiffs' representation that they must have a complete production of documents before they can issue deposition notices for certain witnesses is belied by the fact that they have already issued thirteen deposition notices thus far, including for two witnesses from whom plaintiffs have yet to receive

the complete production of their custodial documents. It is also not consistent with how discovery is usually conducted and is not a threshold contemplated within the Federal Rules of Civil Procedure. In any event, NPC has produced to plaintiffs over 1.7 million documents that can be effectively used to depose NPC witnesses, including 97,889 documents for the eight custodians added by the Court's March 15, 2022 order. Plaintiffs' claim that they need complete production is simply a smokescreen to cause further delay and impose more costs on NPC in this multidistrict litigation. Moreover, because case-specific depositions will not occur until after the close of fact discovery, plaintiffs' request to extend the schedule also would prevent NPC from engaging in discovery that should substantially reduce the inventory.

NPC acknowledges that there is a possibility that certain deponents who have been noticed may not be able to be deposed until after the close of discovery, and NPC is amenable to discussing having those particular depositions occur after the close of fact discovery – a proposition that plaintiffs do not acknowledge or entertain as a compromise. Plaintiffs should not be permitted to extend all discovery so they can seek additional depositions of new witnesses beyond July 15, 2022, because they failed to pursue depositions in a timely fashion. To the extent the Court allows any depositions after July 15, 2022, the Court should limit plaintiffs to depositions that pertain to the raw datasets from clinical studies or any other documentary discovery

for which production is not completed by the current discovery cutoff. As noted above, NPC anticipates that the universe of documents will be limited to a few clinical study raw datasets and that all other pending productions will be completed in time for depositions to be taken before the current close of discovery on July 15, 2022.

Accordingly, the plaintiffs lack good cause for an extension of the discovery period at this time, and the Court should deny plaintiffs' motion.

## I. PRODUCTION OF THE ANONYMIZED RAW DATASETS FROM CLINICAL STUDIES DOES NOT WARRANT EXTENDING ALL DISCOVERY DEADLINES.

The six anonymized raw datasets from clinical studies that plaintiffs have received cover 41 percent of the study participants from the twenty-six studies. NPC has prioritized the largest four of the remaining twenty studies. By early June, NPC anticipates it will have produced to plaintiffs anonymized raw datasets covering 79.5 percent of the study participants. The raw datasets from the remaining studies will be produced on a rolling basis. Thus, there may only be a few remaining studies from which the anonymized raw datasets will not be produced before the close of fact discovery, if any. As NPC noted in the discovery progress update on May 5, 2022, to the extent there are remaining anonymized raw datasets produced after July 15, 2022, an extension to the deadline for plaintiffs' expert report may be appropriate. *See* ECF No. 111. Extension to other discovery deadlines is not warranted at this

time.

Plaintiffs' purported justification for needing this discovery before the close of fact discovery is questionable, as plaintiffs have altered their stated reason for why they need this data to fit their present argument for a wholesale schedule extension. When plaintiffs initially sought the production of raw data from clinical studies, plaintiffs asserted they needed this discovery because "Plaintiffs' current expert has requested the raw data" and plaintiffs cited cases regarding an *expert's* use of raw data. Pls.' Mot. to Compel Production from NPC's Non-Custodial Sources 9-10, 12 (ECF No. 84). Now, plaintiffs have pivoted to claim that the raw data from clinical studies will somehow be used for the questioning of NPC fact witnesses who were involved in development. *See* Pls.' Mot. 3-4 (ECF No. 117). Plaintiffs' newfound reason to extend the fact discovery does not withstand scrutiny.

NPC anticipates that the production of custodial documents will be completed a month before the close of fact discovery, which is sufficient time to complete depositions of witnesses that plaintiffs believe are relevant on this issue. Indeed, plaintiffs already have deposed one former NPC employee (Dr. Leila Alland), who was involved in Tasigna® clinical trials before its initial FDA approval. Thus, plaintiffs' own conduct undermines the position they have taken now regarding the need for raw datasets to depose fact witnesses. Plaintiffs' newly offered purpose to have the raw datasets analyzed by their expert and then question fact witnesses about

purported discrepancies is problematic for another reason. Such evidence (assuming such evidence exists) is of no use to plaintiffs. As plaintiffs acknowledge, the data from clinical studies "constitute the primary support for NPC's labeling determinations as to both efficacy and safety." Pls.' Mot. 3 (ECF No. 117). Thus, plaintiffs are searching for evidence to support a claim that NPC's alleged failure to warn stems from the speculative contention that there may have been unreported cardiovascular events to FDA. Such a claim is clearly preempted under *Buckman Co. v. Pls.' Legal Comm.* 531 U.S. 341 (2001). *See Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017) (holding that *Buckman* extends to failure-to-warn claims where the plaintiff alleges that warnings were inadequate because the defendant-manufacturer failed to provide sufficient information to the FDA). Accordingly, the only appropriate use for the anonymized raw dataset from clinical studies is for developing general causation opinions for plaintiffs' expert (though NPC reserves the right to contest the admissibility of any opinions derived from such retrospective analysis under Federal Rule of Evidence 702 and on other grounds). As NPC has noted, the deadline for the disclosure of the opinions of the particular expert that relies on such retrospective analysis may need to be extended, but that does not warrant all other discovery deadlines being extended.

## II. GOOD CAUSE DOES NOT EXIST BECAUSE PLAINTIFFS HAVE NOT BEEN DILIGENT IN THEIR DISCOVERY EFFORTS.

Plaintiffs' recitation of their discovery efforts regarding the Argus safety database and deposition notices does not provide a complete picture of plaintiffs' efforts in pursing discovery. This litigation has been pending for two years, since March 2020, and plaintiffs have received enormous amounts of discovery since then (in addition to the substantial discovery plaintiffs' counsel had prior to ever filing the present suits), but plaintiffs have delayed in seeking additional discovery, which indicates the only purpose here is to delay the advancement of this litigation.

Plaintiffs' requests concerning Argus demonstrate their lack of diligence. Plaintiffs' purported need for their requested discovery from Argus to prepare for depositions of unidentified NPC safety witnesses is belied by the fact that plaintiffs already have sufficient information from Argus to take these depositions. Plaintiffs' counsel has had Argus information since 2017. Earlier this year, on February 4, 2022, NPC provided plaintiffs with an updated Argus adverse event listing using search terms utilized in regular safety reporting to government regulators. The production included line listings for 21,096 events, including a narrative field for each event. Yet, it was not until March 25, 2022, that plaintiffs requested NPC search 270 fields using 296 search terms (183 medDRA and 112 non-medDRA). NPC informed plaintiffs of the technological challenges associated with plaintiffs' request and NPC proposed a reduction of fields to be searched. On April 18, 2022, plaintiffs

requested that search terms also be applied to two additional fields. Plaintiffs' motion offers no explanation whatsoever about their delay in seeking productions from the Argus database. If plaintiffs believed this information was crucial to the preparation of depositions, they would have asked for it sooner.[1] Thus, any delay with production from Argus is because of plaintiffs' lack of diligence. Had plaintiffs sought the information sooner, they could have possibly raised the issue with the Court if necessary. Plaintiffs' delay in doing so should not be justification to extend the discovery deadlines. *See De Varona v. Disc. Auto Parts*, LLC, 285 F.R.D. 671, 673 (S.D. Fla. 2012) (holding that plaintiff lacked diligence in pursuing the discovery where plaintiff propounded a second discovery request eight months later after receiving the initial discovery at issue). In any event, NPC has been – as with plaintiffs' other discovery requests – working to produce the requested information to plaintiffs.

Regarding depositions, plaintiffs' contention that the discovery deadlines should be extended to permit plaintiffs time to prepare for deposition is a fallacy.

[1] Plaintiffs also claim that information is needed from Argus to establish that "newly acquired information" existed under the federal regulations to show that NPC has failed to adequately warn of the risks associated with Tasigna®. Pls.' Mot. 6 (ECF No. 117). This contention reveals a fundamental misunderstanding of what constitutes "newly acquired information" under FDA regulations. A reinterpretation of data by plaintiffs' expert in a current litigation is not "newly acquired information." *See In re Incretin-Based Therapies Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1024-25 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022) (holding that plaintiffs' expert's re-analysis of data that is unpublished and has not been subject to peer review does not constitute newly acquired information).

Plaintiffs could have issued deposition notices long ago but waited to do so, which has delayed the discovery process. By December 2021, plaintiffs possessed more than 800,000 documents that could have been used to formulate their strategy for depositions of NPC employees. 12/6/2021 Status Conf. Tr. 21:4-7 (NPC's counsel informing the Court of this fact). Plaintiffs also had the benefit of knowledge gleaned from six corporate witness depositions from the prior Tasigna® litigation. At the initial status conference for this MDL, plaintiffs' counsel represented that a production from NPC in January of this year would enable plaintiffs to take depositions of NPC witnesses within a six-month period. 9/28/2021 Status Conf. Tr. 32:14-20. On January 7, 2022, NPC completed the production of approximately 320,000 responsive, non-privileged documents from the agreed custodians' files containing agreed search terms in accordance with Discovery Order No. 1 (ECF No. 49) and Pretrial Order No. 4 (ECF No. 71). At the February 7, 2022 status conference, the Court inquired about when plaintiffs would start taking depositions to which plaintiffs' counsel responded:

> I believe that we will be in a position to at least start noticing and scheduling depositions probably by the time of our next conference in the next 30 days and start setting that schedule, giving us a roughly three-month period of time to conduct the depositions. So we're moving in the right direction. I will say, you know, we still have a lot of material to go through, but everything is going on pace at this point.

2/7/2022 Status. Conf. 5:12-19. Plaintiffs' counsel further represented to the Court that "we feel comfortable that we're going to be able to meet the deadlines in this case. . . . We feel like we'll meet the deadlines." *Id.* at 30:8-15.

Plaintiffs did not issue deposition notices until March 11, 2022, and even then, it was for only four witnesses. Plaintiffs waited nearly a month later, until April 8, 2022, to issue any more notices. Plaintiffs' lack of diligence is further demonstrated with the April 8 deposition notices. Plaintiffs assert that they withdrew three of the six deposition notices "when Plaintiffs learned the witnesses were located in foreign countries and were able to determine adequate substitutes for those individuals." Pls.' Mot. 8 n.2. But plaintiffs should have known the location of these witnesses from correspondence with NPC, or simply doing a Google search before issuing the deposition notices.[2] Moreover, plaintiffs have not identified or noticed depositions of the "adequate substitutes" they stated that they concluded exist for these witnesses, which further unnecessarily delays progress in scheduling those depositions.

Plaintiffs' delay in issuing deposition notices comes notwithstanding that the Court had the "most concern about our forward progress" regarding depositions at

---

[2] The three foreign witnesses for whom the deposition notices were issued were Mark Sims located in Canada, Shilpa Shah-Mehta located in Singapore, and Anke Pregler (neé Meyer) located in Germany. Each of their LinkedIn profiles shows their respective locations. https://www.linkedin.com/in/anke-pregler-md-phd-57167a5/ (Dr. Pregler); https://www.linkedin.com/in/mark-sims-932b134/ (Mr. Sims); https://www.linkedin.com/in/shilpa-shah-mehta-a492165/ (Ms. Shah-Mehta).

the last status conference. 4/13/2022 Status Conf. Tr. 7:25. NPC's counsel also expressed concern that plaintiffs did not issue any deposition notices until March 11, 2022, and that plaintiffs have yet to issue a 30(b)(6) deposition notice in this MDL. *Id.* at 34:16-35:4. The Court agreed with NPC's concerns and cautioned plaintiffs that when the Court "set the discovery deadline . . . it was with a considerable amount of thought in terms of what needs to be done here" and plaintiffs "can't drag your feet with respect to initiating discovery and then expect everything to be done, you know, within a few days in terms of preparing, delivering witnesses, preparing witnesses, and getting that discovery underway." *Id.* at 35:15-24.

Notwithstanding the significant amount of discovery that plaintiffs have received, plaintiffs' representations to the Court, and the Court's concern, plaintiffs now contend that a blanket extension to the discovery deadlines is warranted because the discovery produced to date is purportedly insufficient and prevents plaintiffs from issuing additional deposition notices. Not so. NPC has produced 1,763,540 total documents in this litigation. Plaintiffs have issued thirteen deposition notices, so it is unclear what precisely plaintiffs are claiming is preventing them from issuing additional deposition notices. Indeed, plaintiffs have issued two deposition notices for witnesses whose document productions are not complete – but plaintiffs have received 95,645 emails and documents for these two witnesses – which further

undermines the claim that complete document productions are necessary before plaintiffs can issue additional deposition notices.

Plaintiffs also claim that the document production from the eight additional custodians that the Court ordered on March 15, 2022, is a basis to extend the deadlines. Plaintiffs contend that they are unable to determine which individuals should be deposed until these productions are completed, and wrongly suggest that plaintiffs will not have documents to review until early June. *See* Pls.' Mot. at 8 (ECF No. 117). Plaintiffs have already received 97,899 documents for these eight additional custodians, and remaining productions are expected to be completed by early June, more than thirty days before the close of fact discovery. At this stage, plaintiffs have sufficient documentation to issue deposition notices for these eight witnesses whom plaintiffs claim "held significant sales and marketing positions at NPC." *Id.* As counsel for NPC informed plaintiffs, most of these eight witnesses are former employees and many are CEOs of other companies who are likely to have busy schedules, making it imperative that plaintiffs move the process forward if they do in fact intend to depose them. Moreover, plaintiffs already issued deposition notices for four sales and marketing custodians, including two Tasigna® brand directors – one of which has already occurred, and all are scheduled before the current close of discovery. Thus, the additional depositions that plaintiffs claim they

intend to seek are likely to be duplicative or cumulative of depositions that plaintiffs have already noticed.

## III. CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion that requests that the Court extend the current discovery deadlines.

Dated: May 16, 2022

Respectfully Submitted,

By: /s/ Robert E. Johnston
Joe G. Hollingsworth, Esq.
Robert E. Johnston, Esq.
Andrew L. Reissaus, Esq.
HOLLINGSWORTH LLP
1350 I Street Northwest
Washington, District of Columbia 20005
(202) 898-5800

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of May 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, causing all counsel of record be served by electronic means.