UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: TASIGNA (NILOTINIB)
PRODUCTS LIABILITY LITIGATION      Case No. 6:21-md-3006-RBD-DAB
(MDL No. 3006)

This document relates to all actions.
_____

## ORDER

This matter comes before the Court on **Defendant Novartis' Motion (Doc. 187)** to allocate to Plaintiffs some of the expense ($335,538.37)[1] associated with anonymizing data from certain clinical trials that the Court ordered be produced as requested by Plaintiffs. Plaintiffs filed a response in opposition to the Motion (Doc. 195). For the reasons stated below, the motion is **GRANTED in part.**

On March 15, 2022, the Court granted Plaintiffs' Motion to Compel (Doc. 84) certain information from various clinical trials performed by Novartis. (Doc. 95). The background necessary to understand the current request is set forth in that Order and will not be repeated here. Based on the actual costs of producing the data, Novartis seeks to require Plaintiffs to share some of the pain of the ordered production.

_____

[1] In its motion, Novartis indicates that its actual costs and expenses in complying with this discovery request was much higher, including internal costs and other aspects of the billing of its contractor.

The parties offer similar accounts (though differing in some details and emphasis) of the sequence of events regarding the data request, the anonymization process, the production of data and the eventual withdrawal of the expert witness who was expected to analyze (and provide opinions about) the data.

As pertinent to the issue of cost shifting, the record shows that Plaintiffs wanted raw clinical trial data for use by one of their proposed experts to analyze possible unreported adverse effects of Tasigna. After the Court compelled production of much of Plaintiffs' request, Novartis represented that an anonymization process (to be conducted by a third-party contractor) was necessary to preserve patient confidentiality. This process was both costly and time consuming. Cognizant of this, Novartis sought cost sharing in May 2022 (Doc. 118). This request was denied without prejudice as premature in June 2022 (Doc. 123).

The anonymization process proceeded as to the specified clinical trials, and data was produced on a rolling basis over a period of months. Plaintiffs' expert elected not to attempt any analysis of the data as it was produced, apparently preferring to work with a complete data set. It does not appear that either party undertook to discuss the on-going cost in any detail nor to confer as to any problems with the usefulness of the data, as produced.

Ultimately, Plaintiffs' expert concluded that, as anonymized, the data could

not be used for any satisfactory analysis, and he was withdrawn as a witness. The record does not show whether the anonymization could have been performed otherwise, so as to permit the anticipated analysis, nor whether such analysis would have been probative with respect to the issues in this litigation.

Considering the circumstances described and the arguments advanced in the motion and response, the Court makes the following observations. As previously ruled, the Court did not and does not deem the data request as a "fishing expedition" -- notwithstanding Plaintiffs' ultimate inability to make substantive use of the data. However, it was always debatable and uncertain whether anything useful would be found by analyzing the data, thereby presenting the question whether pursuing the data was worth the effort and cost.

Issues of the costs of properly producing the requested information could and should have been raised in connection with the original arguments regarding production.[2] Both sides should have anticipated the issue of anonymization, which is hardly novel or unexpected. Indeed, Novartis keeps a firm on retainer specifically to perform anonymizing such data. The Court views the parties' failure to consider and discuss the matter earlier as a further example of their incomplete and ineffective discharge of meet-and-confer obligations.

---

[2] While Novartis made a general argument about burdensomeness, it did not provide any detail or specific support for its contention.

3

Even after the order to produce was entered, Novartis' suggestion of cost sharing was delayed until it was mentioned in the May 5, 2022, Status Report and thereafter as the subject of the May 13, 2022, Motion. Given the reservation by the Court of the cost allocation issue for later consideration, the parties should have been highly mindful of the need to control costs by working cooperatively and in sufficient detail to assure efficient production of useful data.

The costs here were incurred incrementally and extended over a long period. Prudence should have dictated to Plaintiffs to ascertain, on an initial and continuing basis, whether the data being supplied was useable and still likely to be worth the costs of production. Likewise, Novartis could readily have supplied details about the on-going costs and at least conferred with opposing counsel to assure the suitability of the data after use of its chosen method of anonymizing.

Generally, "the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358 (1978). A district court may, however, issue an order protecting the responding party from undue burden or expense by "conditioning discovery on the requesting party's payment of the costs of discovery." *Id.* at 358. The purposes underlying potential cost shifting under various circumstances are to promote proportionality and avoid undue burdens and expense in litigation while assuring due process.

While many cases have recited lists of factors to be considered, there is no

4

talismanic guidance as to which cases call for cost shifting nor a formula for determining the amount to be allocated. *See, e.g., Zublake v. UBS Warburg LLC,* 217 F.R.D. 309 (S.D.N.Y. 2003). The Court will not recite the listed factors from *Zublake* or the other cases, as such, relying instead on the observations set forth above as most pertinent to *this case*.

Considering the observations made above and the other circumstances of the litigation, the Court concludes that both sides bear some responsibility for these costs being incurred, ultimately in vain. Because Plaintiffs did not take available steps to determine the suitability of the data or the costs at earlier stages, they bear some responsibility for the unhappy result, sufficient to require that they bear some of the out-of-pocket costs. Because the data request was not made in bad faith or as an overreach and Novartis had control of information about the on-going costs,[3] it is not appropriate to impose the lion's share of those costs on Plaintiffs.

Accordingly, the Court determines that $75,000 of the out-of-pocket anonymization cost should be allocated to be paid by Plaintiffs.

**DONE** and **ORDERED** in Orlando, Florida, on March 31, 2023.

---

[3] The Court notes that Novartis provided considerable detail as to its internal costs associated with this data production but did not seek to allocate any of those matters to Plaintiffs.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE